**Opinion filed March 5, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00279-CR
_____

## LUIS SANCHEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No.  B-37,135**

## DISSENTING AND CONCURRING OPINION

Because I believe that the legislature did not intend to include within the purview of Section 22.01 all persons who had ever dated in their lifetime, and because I believe that marriage is not included within the term "dating relationship," I would reverse the conviction for the third-degree felony, but I would join the majority opinion in which they find sufficient evidence to convict

Appellant of the Class A misdemeanor assault and would remand to the trial court for a new punishment hearing.

In order to address Appellant's first argument, I believe that this court must decide whether the state of "marriage" is included within the term "dating relationship"—again, that being "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b) (West 2014). At the risk of seeming to be insensitive to the nature of a marriage relationship, I do not believe, for a number of reasons, that the legislature contemplated that "marriage" should be included within the definition of "dating relationship."

The majority has set forth the standards to use when a court determines the legislative intent that lies behind a statute. I need not repeat them here. With those standards in mind, I would note first that, in Section 71.0021 of the Family Code, the legislature twice refers to "marriage to *or* dating relationship with an individual with whom the actor is or has been in a dating relationship *or* marriage." FAM. § 71.0021(a)(1), (b)(2)(B) (emphasis added). If marriage was included within the term "dating relationship," the legislature had no need to mention the two disjunctively. Otherwise, the use of the phrase "or marriage" is rendered meaningless, thus indicating that the two relationships are separate and distinguishable.

Furthermore, Section 71.0021(b) instructs that the existence of a dating relationship is to be determined based upon a consideration of the following: "(1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship." FAM. § 71.0021(b). Those considerations are of no use in a determination of whether a marriage exists or has existed; they only find utility when we determine whether a dating relationship exists or has existed.

2

Additionally, Section 71.0021(c) specifically excludes "[a] casual acquaintanceship or ordinary fraternization in a business or social context" from the definition of "dating relationship." FAM. § 71.0021(c). Again, that language has no applicability to marriage, but only to a dating relationship. For these reasons alone, I believe that the terms "dating relationship" and "marriage" are mutually exclusive as used in this legislation.

There are other reasons that lead me to conclude that the State cannot use the term "dating relationship" to support the third-degree felony conviction in this case. The statute first provides that a dating relationship "means a relationship between individuals who *have* . . . a continuing relationship of a romantic or intimate nature." FAM. § 71.0021(b) (emphasis added). The use of the present tense verb "have" indicates that the dating relationship is ongoing at the time of the assault. Although the relationship is hopefully a romantic and intimate one, sadly, that is not always the case. Persons who are married are engaged in much more than a dating relationship. I propose that the legislature contemplated that dichotomous concept; otherwise, it would not have used the term "dating relationship *or* marriage" disjunctively in the parts of the statute to which I referred earlier in this opinion.

Next, the statute includes within its definition of "dating relationship" those relationships "between individuals who . . . *have had* a continuing relationship of a romantic or intimate nature." FAM. § 71.0021(b) (emphasis added). *Have had* is of the present perfect tense classification of verbs. The present perfect tense utilizes the verb *has* or *have* and can be used (1) to represent an action that has been completed recently, (2) to represent an action that has been completed at some indefinite time in the past, or (3) to represent an action that began in the past and continues into the present. Our focus should be upon discovering which one of those uses the legislature intended when it used the term *has had* in connection

3

with the term "dating relationship." To me, it seems to be reasonable that the legislature did not use the term to represent an action that began in the past and continues in the present because the parties were married, not dating, at the time of the assault and because the same facts would be accomplished as would the use of the present tense; this use of the present perfect tense would render "have . . . a continuing relationship" meaningless.

As to the second possible use of the present perfect tense, if it were not for my belief that the legislature, by its disjunctive presentation of the concepts of dating relationships and marriage in other parts of the applicable statutes, separated the two types of relationships, I might feel constrained to say that, at some indefinite point in the past, Appellant and Rachael dated and therefore *had been* in a dating relationship such as would support the finding of guilt in this case. However, that would mean that it would not matter when a dating relationship existed, even decades prior, and would give no regard to intervening circumstances, so long as the relationship ended at some indefinite time prior to the time of an assault for which the State charges a person. The words that the legislature actually used do not indicate to me that the legislature intended that result.

Further, laying aside my expressed belief that the legislature has explicitly separated dating from marriage in parts of this statute, if the legislature intended that the statute was to be applied to parties who had ever been in a dating relationship—no matter how far antecedent to the assault—and with no consideration to an intervening marriage or other circumstance, then the past perfect tense was available to the legislature to accomplish that result. The past perfect tense uses the verb *had* and describes action that happened at a time earlier than a specific time or action in the past. Had the legislature intended to include dating relationships that had ever existed in a person's lifetime, then it could have

4

written the statute so that the term would include persons who *had had* a dating relationship.

The only use, then, that the legislature could have intended is that, to "have had" a dating relationship, the dating relationship must have recently ended. I do not know, nor do I think it necessary for us to decide in this case, the limits of the word "recently" because I think that, as a matter of law, a period from 2006 to December 18, 2009, does not fit within the concept of "recently."

I am mindful of the two appellate court decisions cited by the majority in support of their position. In each of those cases, the courts dealt with the "dating relationship" issue.

I do not see *White*, as being in opposition to that which I suggest in this dissent. There, there were no intervening issues such as marriage, and the period of time that the relationship existed was two months as opposed to two and one-half years as in this case. *White v. State*, No. 05-09-00112-CR, 2010 WL 2951748 (Tex. App.—Dallas July 29, 2010, pet. ref'd) (mem. op., not designated for publication). Such a situation clearly fits the language used by the legislature. If the Dallas court is opining that *have* and *have had* are two separate things, then I agree to the extent such is not inconsistent with respect to the distinct tenses of the two verbs.

Neither do I see *Hill* as being contrary to my position here. It was Hill's position that the State was required to prove that the relationship was ongoing at the time of trial and that, in the absence of that proof, the evidence was insufficient. *Hill v. State*, No. 01-10-00926-CR, 2012 WL 983338 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op., not designated for publication). As stated by the majority, the court in *Hill* rejected Hill's argument because that position "would render the words 'have had' meaningless." *Id.* at *3. Again, the Houston court held "that the inclusion of the words 'have had'

5

permitted the jury to find that a dating relationship existed if it found that Hill and [the victim] had a continuing relationship of a romantic or intimate nature in the past, regardless of whether that relationship was ongoing at the time of the assault." *Id.*

*Hill* did not involve the question of marriage as an intervening circumstance, and there was evidence in *Hill* that the relationship had ended just one month prior to the assault. Those are sufficient differences to distinguish this case from *Hill*.

There are yet other reasons that support Appellant's position in this case. Section 22.01 of the Penal Code includes within its third-degree felony provisions those persons listed in Section 71.003. PENAL § 22.01(b)(2). Those persons are denominated "Family" and are "individuals related by consanguinity or affinity, . . . individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent, without regard to whether those individuals reside together." FAM. § 71.003. The State did not charge Appellant under this portion of the statute, although it clearly could have.

Section 22.01 of the Penal Code includes within its third-degree felony provisions those persons listed in Section 71.005 of the Family Code. PENAL § 22.01(b)(2). Section 71.005 refers to "Household" and defines that concept as "persons living together in the same dwelling, without regard to whether they are related to each other." FAM. § 71.005. The State did not charge Appellant under this portion of the statute.

The offense of assault is enhanced from a Class A misdemeanor to a third-degree felony when the assault is committed against certain classes of people in addition to those included within the definition of "dating relationship." It is clear that Rachael was a member of more than one of the classes described in Section 22.01. The evidence conclusively establishes that, at the time of the assault,

6

Appellant and Rachael were married, that they were parents of the same child, and that they were members of the same household. He could have been charged under any of those third-degree felony provisions. However, the State did not allege any of those other relationships in the indictment.

"Under *Jackson*, the State must prove the statutory elements that it has chosen to allege, not some other alternative statutory element that it did not allege." *Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011); *see Jackson v. Virginia*, 443 U.S. 307 (1979). I recognize that there may be some overlap between the categories, as evidenced in this case, but the nature of each relationship is nevertheless distinct. The State did not allege that the assault was committed against a member of some other class named in Section 22.01 of the Penal Code but, rather, limited itself to the "dating relationship" provision of the statute. I would hold that the State alleged a single narrow element for which I find no support in the evidence.

I do not fault the State for charging Appellant as it did. I recognize that it is not always easy to define the nature of the relationship between two parties to the exclusion of all characterizations. And perhaps the State was not aware of the divorce or the marriage between Rachael and Appellant. However, as the Court of Criminal Appeals has explained, "when there is overlap or uncertainty . . . the State may plead alternatives in the indictment." *Cada*, 334 S.W.3d at 772. In this case, the State did not plead any of the several available and applicable alternatives. I would find that there was a variance between the indictment and the proof. Because we do not consider materiality of the variance, I would conclude that the variance is fatal. *See id.* at 776.

However, I join in that portion of the majority opinion in which it finds the evidence sufficient to support the finding that Appellant committed the offense of assault and I would remand this case to the trial court for a new punishment

hearing.  *See* Tᴇx. R. Aᴘᴘ. P. 43.2(d); *Thornton v. State*, 425 S.W.3d 289, 306–07 (Tex. Crim. App. 2014).


                                    JIM R. WRIGHT
                                    CHIEF JUSTICE


March 5, 2015

Publish.  *See* Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.